HONORABLE MARSHA J. PECHMAN

UNITED STAETS DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JOSIAH HUNTER,

        Plaintiff,

v.

CITY OF FEDERAL WAY, FEDERAL WAY POLICE DEPARTMENT, FEDERAL WAY POLICE OFFICER KRIS DURRELL, FEDERAL WAY POLICE CHIEF ANDY J. HWANG, JOHN DOE AND JANE DOE OFFICERS,

        Defendants.

No. 2:16-cv-01445-MJP

**PLAINTIFF'S TRIAL BRIEF**

### I.    INTRODUCTION

Plaintiff, Josiah Hunter, submits the following Trial Brief. Plaintiff seeks a judgment in his favor. The Plaintiff asserts that Federal Way officer Kris Durell, while working for the City of Federal Way, used excessive force against him in violation of his Fourth Amendment rights that are protected by the United States Constitution when Kris Durell used physical force on him on or about September 14, 2014, when Mr. Durell used the Lateral Vascular Neck Restraint ("LVNR") on Plaintiff. The LVNR involves the restriction of blood to an individual's brain. Plaintiff maintains that he did not do anything to justify any use of force against him and that placing hands or arms around his neck and

Plaintiff's Trial Brief

1

**VALDEZ LEHMAN, PLLC**
600 108th Ave NE Ste 347
Bellevue, WA 98004
P: 425.458.4415
F: 425.732.0130

squeezing his neck was completely unjustified. He also alleges assault by the Defendants arising out of the same facts. The evidence to be presented will show that Defendants physical force was excessive and violated the Plaintiff's Fourth Amendment rights.

## II.     BACKGROUND FACTS

On September 14, 2014 Josiah Hunter was spending time with his friend, Junior Beausilien. That same evening Mr. Hunter and Mr. Beausilien stopped at the AM/PM store located on the corner of South 320th and Pacific Highway south in Federal Way to make a purchase, both individuals are young black males. They purchased a black and mild cigar and then sat in Josiah's car talking. While in the car, the two of them heard a remarkably loud collision. They saw that two vehicles were involved in what appeared to be a head on collision. Out of concern for the people that were involved in the collision, Josiah and Junior went to assist those that may have been injured.

Both of the vehicles were extensively damaged and there was debris strewn all over a significant portion of the road. Josiah and Junior first went to a vehicle that had struck a light pole. In that vehicle, Josiah could see that there was a driver and a passenger. The driver stumbled out of the car as Josiah and Junior were inquiring as to whether he was okay. Inside this vehicle Josiah could see that there were several beer cans. At this stage several individuals had begun to congregate at the scene of the accident.

After indicating that he was o.k., the driver of the vehicle that had hit the light pole began to walk away while talking on the phone. Another bystander pointed to the driver that was walking away from the scene and told Josiah Hunter and Junior Beausilien to bring him back to the scene. Josiah and Junior believed that the person that instructed them to go get the drunk driving suspect was an off duty police officer. Josiah now knows that the individual that instructed them to go get the suspect and

Plaintiff's Trial Brief

2

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA  98004
P: 425.458.4415
F: 425.732.0130

bring him back to the scene was a private investigator by the name of Michael Anderson. The police had not yet arrived at the scene. Josiah Hunter then escorted what he believed may have been a drunk driver back to the crime scene and had him wait until law enforcement arrived. While they were waiting for law enforcement to arrive, Josiah attempted to start a conversation with the potential drunk driver in an attempt to calm him down. Josiah Hunter and Junior Beausilien had never met the potentially drunk driver prior to this incident. Josiah Hunter hoped that he could deescalate the driver who seemed to have become increasingly agitated. Josiah Hunter and Junior Beausilien later came to know that the name of the drunk driving suspect was Travis Wells.

Josiah believes that Officer Durell of the Federal Way Police department was the first officer on scene. At the time of Officer Durell's arrival, Josiah Hunter and Junior Beausilien were doing what they could do to make sure that Travis Wells did not flee the scene. They had successfully struck a conversation with Mr. Wells and maintained in close proximity to him until Officer Durell had gotten to where they were standing. Officer Durell asked Josiah Hunter and Junior Beausilien if they were drivers of one of the vehicles that were involved in the accident. Josiah Hunter and Junior Beausilien indicated that they were not. Officer Durell was then able to handcuff Travis Wells without incident. Josiah Hunter did not interfere with the handcuffing of Travis Wells in any way.

Once Travis Wells was handcuffed, Mr. Wells turned back and looked at Josiah and asked him to pick up his wallet and cell phone for him and give it to him. Without thinking, Josiah Hunter admittedly reached down and held the wallet briefly. Upon seeing this, Officer Durell immediately told Josiah Hunter to put the wallet down and step back. Josiah Hunter immediately placed the wallet back on the ground and then stepped back to where he saw other people had congregated and standing and watching the events unfold of the accident scene. Out of fear that he may be accused of something that he did not do, Mr. Hunter attempted to record the location of the wallet, phone and the

Plaintiff's Trial Brief

3

officer.  At that stage another Federal Way police officer came up and took a picture of Junior Beausilien and Josiah Hunter.

Federal Way police officers then became insistent that the group that had congregated to move further back away from the scene.  Josiah Hunter and Junior Beausilien continued to move back with the group of individuals in compliance with the requests of the officers.  Josiah Hunter believes that the police officers then began to focus their attention on him for reasons he did not understand.  By this time, Travis Well had already been arrested and placed in the back of a squad car.  Josiah Hunter and Junior Beausilien were simply standing in the AM/PM parking lot as instructed by the officers.

Josiah Hunter saw the officers gather together and then one of them walked into the AM/PM store. The officers that congregated together included Officer Durell and Hinckle.  After the officer came out of the AM/PM store, the officer then announced that Junior Beausilien and Josiah Hunter that if they did not leave the area that they were standing in they would be arrested for trespass. Josiah Hunter attempted to explain to the officers that was attempting to help his friend find a ride home and needed to make a call.  As Josiah Hunter was attempting to make a call he was walking northbound toward another store.

Josiah Hunter then turned and began walking back to his car so that he could leave the area.  As Josiah was walking towards his car he saw that Junior Beausilien was being grabbed and that the officers were using physical force against Mr. Beausilien.  Josiah began to open his door so that he could drive away when, to his surprise, Officer Durell pushed Josiah's door shut.  Officer Durell then quickly grabbed Josiah Hunter's arm and then placed his elbow forcefully against Josiah Hunter's back. Next, Officer Durell put one of his arms around Josiah Hunter's neck from behind and began to tighten his grip. Josiah Hunter felt like he could not breathe and was afraid that he was being choked to death.  Josiah Hunter felt as though he was going to pass out.  Officer Durell then roughly handcuffed Josiah Hunter and made the cuffs extremely tight around his wrists.

Plaintiff's Trial Brief

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA  98004
P: 425.458.4415
F: 425.732.0130

Josiah Hunter did not do anything to justify the use of force that Officer Durell had committed against him. Josiah did not hit, push, kick or threaten in any manner towards Officer Durell or any other officer on the date of this incident. He simply attempted to help individuals that were involved in a serious accident and to also assist the police as well. Notably, Officer Durell during his deposition noted that Josiah Hunter and Junior Beausilien were the first civilians that he had encountered that actually escorted a suspect back to the scene of an incident. The force used to arrest Josiah Hunter for misdemeanor trespass and misdemeanor obstruction was unnecessary and excessive.

Josiah Hunter experienced significant emotional and physical harm as a result of the actions of Federal Way Police Officer Durell. While the physical injuries have subsided the emotional injuries continue to persist.

### III. LAW and ANAYSIS

#### a. Kris Durell was acting under color of state law when he used excessive force on Josiah Hunter

The language of § 1983 as originally passed is as follows:

> [A]*ny person who,* under color of any law, statute, ordinance, regulation, custom or usage of any State, *shall subject, or cause to be subjected,* any person…to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statue, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress…(emphasis added).

*Monell v. New York City Dept. of Social Services,* 436 U.S. 665, 691-92 (1978). Under "color" of law means under the "pretense" of law. *Screws v. U.S.,* 325 U.S. 91, 111 (1945) (police officers acting under color of law because authorized to act, even though not authorized to use excessive force.) Acts of police officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only

Plaintiff's Trial Brief

action, which the government in fact authorized, the words "under color of any law" were hardly apt words to express the idea.  *Screws,* 325 U.S. at 111.

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Graham v. Conner,* 490 U.S. 38, 393-394 (citing *Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979).

The use of force by a law enforcement officer violates the Fourth Amendment if the force is unreasonable given all the "relevant circumstances."  *Hammer v. Gross,* 932 F.2d 842, 846 (9th Cir. 1991).  Analyzing whether the use of force is unreasonable involves three steps.  "First we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the 'type and amount of force inflicted."  *Glenn v. Washington Cty.,* 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Espinosa v. City & Cnty. Of S.F.,* 598 F.3d 528, 537 (9th Cir. 2010)).  "Second, we evaluate the government's interest in the use of force."  *Id.*   Third, "we balance the gravity of situation of the intrusion of the individual against the government's need for that intrusion."  *Glenn*, 678 F.3d at 871 (quoting *Miller v. Clark City.,* 340 F.3d 959, 964 (9th Cir. (2003)).

Here, Mr. Durell used considerable physical force on Josiah when he put Plaintiff into a choke, which was unreasonable given all relevant circumstances.  Mr. Durell had put Josiah into a choke hold, his neck was constrained, and he feared he was going to die.  Josiah had committed no crime, and was not told by any officers that he was under arrest.  Josiah posed no immediate threat to the safety of the officers or others.  Josiah had told officers that he was leaving the scene and needed to make a call for his friend.  After making his call, Josiah walked calmly toward the officers and was fully compliant.  No reasonable officer would believe using force, let alone significant force, was lawful under circumstances.   Since Mr. Durell had fair warning that his use force violated Josiah's Fourth Amendment rights, he is not entitled to qualified immunity.

Plaintiff's Trial Brief

6

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA  98004
P: 425.458.4415
F: 425.732.0130

### b. Assault Claim

It is Plaintiff understands that Defendants have agreed that no additional analysis is required for the Plaintiff's claim of assault when a claim for excessive force is claimed because it is unnecessary, duplicative, and injects a risk of double recovery. Thus, Plaintiff's claim for assault is same for the excessive force.

## IV. DAMAGES

### a. *Mr. Joisah Hunter is entitled to recover damages for his emotional injuries.*

Emotional distress damages are "essentially subjective" and may be proven by reference to an injured party's conduct and the observation by others. *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 513-14 (2000) citing *Carey v. Piphus,* 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and *Merriweather v. Family Dollar Stores*, 103 F.3d 576, 580 (7th Cir. 1996)(noting that plaintiff's testimony can be enough to support emotional damages). Washington law has no severity requirement as to a precondition to awarding compensatory damages. A plaintiff's testimony corroborated by a spouse or sibling is adequate to support the jury's verdict. *Id.* citing *Herring v. Department of Social and Health Services,* 81 Wn. App. 1, 914 P.2d 67, 81 (1996). If Plaintiff succeeds on his assault claim, then he is entitled to recover damages for emotional distress. *Rice v. Janovich,* 109 Wn.2d 48, 62 (1987).

Here, Mr. Hunter will offer corroborating testimony from his friend, his mother, and his father. That is more than sufficient evidence to award emotional distress damages under *Passantino*.

Plaintiff's Trial Brief

7

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA  98004
P: 425.458.4415
F: 425.732.0130

### b. Mr. Durell is liable for punitive damages.

Punitive damages are available in a § 1983 action. *Carlson v. Green,* 446 U.S. 14, 22 (1980). Pubic officers were liable for punitive damages for their misconduct on the same basis as other individual defendants. See also *Scott v. Donald,* 165 U.S. 58, 88-89 (1897) (punitive damages for constitutional tort). *Smith v. Wade,* 461 U.S. 30, 35-36 (1983) (finding for the first time precisely that punitive damages are available under § 1983). The *Wade* Court held that punitive damages are available if the conduct rises to the level of reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law. *Id.,* 461 U.S. at 51 citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 233 (1970)(BRENNAN, J. concurring and dissenting).

The *Wade* Court concluded that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. The Court clarified that this "threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." *Wade,* 461 at 56A.

We believe the jury will find that Mr. Durell's conduct was motivated by evil intent or in reckless disregard of Mr. Hunter's federally protected rights.

### c. Josiah is entitled to recover damages for his physical injuries.

Josiah Hunter experienced significant pain and suffering as a result of the constitutionally impermissible actions of Officer Durell. The choking of Josiah Hunter by Officer Durell caused Mr. Hunter significant pain and suffering that lasted for an extended period of time. Josiah Hunter's injuries included significant soreness and swelling in his neck, difficulty breathing, the cut off of blood flow to his head, generalized pain and soreness throughout his body and swelling and welts on his wrists.

Plaintiff's Trial Brief

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA 98004
P: 425.458.4415
F: 425.732.0130

8

## V.  CONCLUSION

Defendant Kris Durell is liable to Josiah Hunter for the damages he caused when he violated both state and federal law protecting Mr. Hunter's Fourth Amendment rights. Mr. Hunter respectfully requests the Court instruct the jury consistent with the legal authority cited above.

DATED THIS 27th day of June, 2018, at Bellevue, Washington.

By /s/ Jesse Valdez
Jesse Valdez, WSBA #35378
VALDEZ LEHMAN, PLLC.
Co-Counsel and Attorney for Plaintiff
Josiah Hunter

By /s/ James Bible
James Bible, WSBA #33985
James Bible Law Group
Co-Counsel and Attorney for Plaintiff
Josiah Hunter

Plaintiff's Trial Brief

9

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA  98004
P: 425.458.4415
F: 425.732.0130

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2018, I caused a true and correct copy of the above to be served to the following in the manner indicated below:

Ann E. Trivett, WSBA #39228
Attorneys for Defendant
2100 Westlake Avenue North, Suite 206
Seattle, WA  98109
<u>Attorney for defendants</u>
<u>*Via Email and U.S. Mail*</u>

J. Ryan Call, WSBA #32815
Acting City Attorney
City of Federal Way
33325 Eighth Ave. S.
Federal Way, WA  98003
Email:  ryan.call@cityoffederalway.com
<u>Attorney for defendants</u>
<u>*Via Email and U.S. Mail*</u>

/s/ Jesse Valdez
Jesse Valdez

Plaintiff's Trial Brief

10

VALDEZ LEHMAN, PLLC
600 108th Ave NE Ste 347
Bellevue, WA  98004
P: 425.458.4415
F: 425.732.0130