HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JOSIAH HUNTER,

               Plaintiff,

v.

CITY OF FEDERAL WAY, FEDERAL WAY
POLICE DEPARTMENT, FEDERAL WAY
POLICE OFFICER KRIS DURRELL,
FEDERAL WAY POLICE CHIEF ANDY J.
HWANG, JOHN DOE AND JANE DOE
OFFICERS,

               Defendants.

NO. 2:16-cv-01445-MJP

DEFENDANTS' TRIAL BRIEF

      Defendants City of Federal Way and Police Officer Kris Durell submit the following trial brief consistent with the Court's scheduling order and in anticipation of the July 9, 2016 jury trial.

## I.      INTRODUCTION AND PROCEDURAL POSTURE

      This case arises from the arrest of plaintiff Josiah Hunter on September 14, 2014 and the force defendant Federal Way Police Officer Kris Durell used in effecting that arrest. Specifically, Mr. Hunter alleges it was excessive for Officer Durell to have used a Lateral Vascular Neck Restraint (LVNR) control hold before placing Mr. Hunter in handcuffs.

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 1

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    Mr. Hunter filed his Complaint on September 12, 2016, asserting numerous causes of

2    actions against the City of Federal Way, Officer Kris Durell, Chief Andy Hwang, and John and

3    Jane Doe officers. (Complaint, dkt. # 1.) On December 15, 2017, the Honorable Robert S. Lasnik

4    granted defendants' motion for partial summary judgment and dismissed Mr. Hunter's federal and

5    state law false arrest claims, negligence and outrage claims, 42 U.S.C. § 1983 *Monell* claim against

6    the City, and all claims asserted against Chief Hwang. (Order, dkt. #39.) Judge Lasnik's order also

7    stated, "The Court is sensitive to the fact that Mr. Hunter's briefing suggests that racism played a

8    role in Officer Durell's decision to arrest Mr. Hunter. Plaintiff has not, however, asserted an equal

9    protection or race-based animus claim." (*Id.* at p. 9.) Mr. Hunter's only claims for trial are: (1) a

10   42 U.S.C. § 1983 Fourth Amendment use of force claim against Officer Durell and (2) a state law

11   assault claim asserted against Officer Durell and the City under a theory of vicarious liability.

12   Jury trial is set to begin on Monday, July 9, 2018. The defense anticipates it will take

13   approximately four trial days to submit the case to a jury, depending in part on the number of

14   witnesses called by plaintiff and this Court's rulings on defendants' motions *in limine* requesting

15   restrictions on the evidence admissible at trial.

16                               **II.    <u>EVIDENCE AT TRIAL</u>**

17   **A.    Mr. Hunter's September 14, 2014 Arrest**

18   On September 14, 2014, Officer Durell was working patrol as a uniformed police officer

19   for the City of Federal Way. At about 9:23 p.m., he was dispatched to respond to a two-car collision

20   at the intersection of South 320th Street and Pacific Highway South, one of the busiest intersections

21   in the City. A light gray Dodge Ram had run a red light and collided with a grey Chevrolet

22   Silverado.

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 2

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Officer Durell arrived at about 9:24 p.m. Dispatch had advised that an occupant of the Dodge Ram was possibly intoxicated and arguing with the other driver. Officer Durell did not know if anyone had been injured. His first priority was to see if anyone was hurt.

Officer Durell positioned his patrol car to help block traffic and got out to assess the scene. He saw the gray Dodge Ram truck partially on the northwest sidewalk and partially blocking lanes of travel. It had collided with a light pole, and no one was inside. The Chevrolet Silverado was blocking westbound traffic on South 320th Street, the passenger side was damaged, and its driver, Dennis Watson, was nearby. Although he had a minor cut on his forehead, Mr. Watson said he did not have any injuries and declined medical attention. Officer Durell requested that another officer respond to the scene to assist him with traffic control. There were at least five or six people in the area, and he wanted to identify the DUI driver.

Next, Officer Durell spoke with Michael Anderson, who witnessed the collision. Mr. Anderson said the driver and passenger of the Dodge were trying to leave. There was a crowd near the AMPM gas station at the northwest corner of the intersection, but no one admitted to being the driver of the Dodge. Mr. Anderson then pointed out a man, later identified as Travis Wells, walking towards the scene. Mr. Wells was escorted by two black males, later identified as plaintiff Josiah Hunter and his friend, Junior Beausilien. As Mr. Wells approached, Officer Durell asked him if he was the driver of the Dodge, and Mr. Wells said he was. Mr. Hunter and Mr. Beausilien denied being the passenger in the Dodge. At this point, Officer Durell did not know if Mr. Hunter or Mr. Beausilien were involved in the collision or stopped Mr. Wells from leaving the scene.

Mr. Wells was carrying a wallet and a cell phone in his hand. Officer Durell asked Mr. Wells to speak with him, and Mr. Wells began speaking rapidly and with a raised voice as he

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    approached. Mr. Wells was stumbling and swaying from side to side as he walked and had

2    difficulty maintaining his balance. His eyes were bloodshot and glassy. He was yelling, "Don't

3    shoot me Mr. Officer, I'm unarmed." It was obvious Mr. Wells was intoxicated.

4         Officer Durell asked Mr. Wells to sit on the sidewalk to prevent him from injuring himself

5    and so Officer Durell could gain a position of advantage. Mr. Wells agreed, but was upset and

6    said, "I'm the one who was run into!" He was sitting on the sidewalk with his feet on the street.

7    He had also put his wallet (and maybe his cell phone) on the ground next to him. At this point, the

8    crowd had gathered closer to Mr. Wells and the Dodge. Officer Durell was concerned about

9    everyone's safety, because the Dodge had run into the light pole and there was also traffic driving

10   by. Officer Durell was also concerned Mr. Wells might resist arrest, posing a risk of injury to

11   himself and those nearby. He asked the crowd of about five or six people to step back.

12        The evidence will show that everyone except Mr. Hunter and Mr. Beausilien complied with

13   Officer Durell's command. Instead, they smiled at Officer Durell and stayed next to Mr. Wells and

14   the accident scene. Their smiles were not friendly; they were defiant. Officer Durell does not

15   remember if Mr. Hunter and Mr. Beausilien were standing in the parking lot or on the sidewalk,

16   but he remembers feeling they were too close and that he had to keep an eye on them.

17        During this time, Mr. Wells was yelling at Officer Durell and claiming that he was the

18   victim. He smelled strongly of alcohol. Officer Durell asked Mr. Wells if he was injured, and he

19   replied in the negative. When Officer Durell attempted to ask Mr. Wells more questions, Mr.

20   Hunter and Mr. Beausilien started to approach Mr. Wells. Officer Durell again told them to back

21   up. They stepped back to the AMPM parking lot. At this point, Officer Durell felt satisfied that

22   they had stepped back far enough to not be an immediate concern.

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 4

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    Mr. Wells was still talking but not making any sense, and he was agitated. Officer Durell

2    would ordinarily have asked Mr. Wells to perform a field sobriety test. However, Officer Durell

3    did not feel comfortable making this request under the circumstances. He was still the only police

4    officer on scene, he was concerned about Mr. Wells' level of agitation, and he was concerned

5    about the behavior of Mr. Hunter and Mr. Beausilien. It was not clear whether they knew Mr.

6    Wells, what interest, if any, they had in the accident investigation, or to what level they were

7    willing to interfere with that investigation. Officer Durell arrested Mr. Wells at about 9:27 p.m.

8    In order to place the handcuffs on Mr. Wells, Officer Durell had to face his back to the

9    crowd at the AMPM. While he was detaining Mr. Wells, Mr. Hunter approached them. Mr. Hunter

10   reached down and took Mr. Wells' wallet and started to walk away. Officer Durell yelled at Mr.

11   Hunter to return the wallet. Mr. Hunter complied. The evidence will show Officer Durell asked

12   Mr. Hunter why he took the wallet, and Mr. Hunter said, "I'm just trying to help homeboy out."

13   Officer Durell told Mr. Hunter to leave the area and stop interfering with the investigation.

14   Officer Hinckle had arrived on scene. Officer Durell told him about the situation and asked

15   him to watch the crowd and keep them away from the accident scene. Officer Durell escorted Mr.

16   Wells to his patrol car. Officer Schmidt then arrived on scene. Officer Durell advised him of the

17   situation and told him that there were several subjects standing in and near the AMPM parking lot

18   and that one of the males had attempted to take a wallet that had been laying on the sidewalk near

19   one of the damaged vehicles. Officer Durell asked that he assist Officer Hinckle with crowd

20   control. Officer Durell returned to Mr. Wells, ran his name through the computer system, and took

21   note of Mr. Wells' statements.

22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 5

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1     Officer Schmidt saw that Officer Hinckle was taking a witness statement from a female on
2     the scene. He also saw two males, later identified as Mr. Hunter and Mr. Beausilien, standing about
3     five feet away from the accident scene. He asked if they saw the accident, and they said no. They
4     were very close to a light pole that had been struck by one of the vehicles, and Officer Schmidt
5     was concerned about their safety. He asked the two males to step back a few feet. Mr. Hunter
6     looked at Officer Schmidt and then spat on the ground. Mr. Beausilien said, "This is some bullshit."
7     He said this was an attitude of disgust, as if he could not believe Officer Schmidt was making this
8     request. Officer Schmidt again told them to step back and warned them not to enter the accident
9     scene. Not only did he do this for safety reasons, he did not believe these individuals had any
10    legitimate reason for being so close to the accident investigation. Officer Schmidt used a calm and
11    non-confrontational voice. He was thinking about all the things they needed to do to complete their
12    investigation and he wanted them to leave. They both took a few steps back and stared at Officer
13    Schmidt. Their behavior was different than most people who are simply curious about an accident
14    scene, and Officer Schmidt was concerned about their purpose for being so close. While Officer
15    Hinckle was taking the witness statement, he overhead the two males standing near the accident
16    scene and being told to move away.

17    Officer Schmidt began taking photographs of the accident scene. While he did, Mr. Hunter
18    and Mr. Beausilien kept walking closer to him. Officer Schmidt commanded them to step back
19    several additional times. He estimates he made this request approximately 20 times. He felt like
20    he had to keep observing the two men, because he wanted to make sure they would not take other
21    belongings from the scene. It seemed like they were playing some kind of game. This delayed his
22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 6

1  ability to collect the photographs and maintain overall scene security, especially because he knew
2  the tow trucks would be their shortly and he needed to get through the photography promptly.

3         Meanwhile, Officer Durell was re-contacting Mr. Watson and Mr. Anderson to take their
4  statements about what had happened. He also requested two tow trucks to remove the disabled
5  vehicles from traffic and returned to Mr. Wells and asked whether he wished to do voluntary field
6  sobriety tests. Mr. Wells declined.

7         Officer Durell then returned to Officer Schmidt to update him on Mr. Wells' arrest and the
8  tow request. Officer Durell also asked Officer Schmidt to complete in an impound form, which
9  would require Officer Schimdt to go back to his car and step away from Mr. Hunter and Mr.
10 Beausilien. Mr. Hunter and Mr. Beausilien were still very near to the Dodge and the accident scene.
11 Officer Schmidt also reported to Officer Durell that the two men continued to attempt to enter the
12 accident scene. Officer Durell was concerned about them remaining at the scene and looking for
13 items of value. He advised all the people on the scene that they needed to move back behind the
14 gas pumps to remain clear of the accident scene. Mr. Beausilien moved back near the pumps, but
15 Mr. Hunter moved to the north side of the accident scene not behind the pumps. Mr. Hunter only
16 stepped back about one foot. Officer Durell specifically told Mr. Hunter to move back behind the
17 pumps or he could be arrested. Mr. Hunter responded, "You ain't arresting me." Officer Hinckle
18 had finished taking his witness statement by this time and observed the two males not complying
19 with Officer Durell's repeated commands to move away from the accident scene.

20        The officers were concerned about Mr. Hunter's and Mr. Beausilien's presence at the scene
21 but wanted to try all available methods to get them to leave, short of an arrest. Officer Schmidt
22 went into the AMPM and asked the employee there, Corzaon Pajarillo, if Mr. Hunter or Mr.

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 7

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Beausilien had permission to be on the property. She said they were not patronizing the business,

2   that she wanted them to leave, and she wanted them trespassed. Officer Schmidt left the store and

3   told Mr. Hunter and Mr. Beausilien that the clerk wanted them to leave the property and not come

4   back. Officer Durell then advised the two men that they needed to leave at the employee's request,

5   as they were not using the business. The officers also told the two men that they would be arrested

6   for trespass if they did not leave the property.

7          At this point, Mr. Hunter appeared to get on his cell phone and told Officer Durell he would

8   leave when he was finished with his call. He started to walk away from the officers through the

9   parking lot. Mr. Hunter also started to walk to the north end of the parking lot. Officer Durell again

10  advised them that they needed to leave or they would be arrested. Mr. Hunter stopped at the north

11  end of the parking lot, never leaving the premises, and started to circle back towards the front doors

12  of the AMPM.

13         Officer Durell did not want to make any arrests, but the delay had gone on long enough

14  and he was concerned about Mr. Wells alone in his patrol car. Officer Durell told Mr. Beausilien

15  he was under arrest. Mr. Beausilien said he was not under arrest. Officer Durell grabbed Mr.

16  Beausilien's left arm and attempted to place it behind his back.  He immediately felt Mr. Beausilien

17  resist those efforts by trying to force his arms forward. Similarly, Officer Schmidt grabbed Mr.

18  Beausilien's right arm, and Mr. Beausilien resisted. Officer Hinckle stepped in and placed Mr.

19  Beausilien in handcuffs. Mr. Beausilien continued resisting. During this process, Mr. Hunter

20  started to walk towards Officer Schmidt's and Officer Durell's backs. Officer Durell was

21  concerned that Mr. Hunter was trying to stop the arrest of Mr. Beausilien.

22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 8

1    Officer Durell told Mr. Hunter to stop approaching. Mr. Hunter did not comply and

2    continued approaching. Officer Durell advised Mr. Hunter that he was also under arrest. After Mr.

3    Beausilien was safely in handcuffs, Officer Durell approached Mr. Hunter near the front of the

4    AMPM store. Mr. Hunter said he was going to leave and opened the door to one of the vehicles

5    parked there. Officer Durell told Mr. Hunter to put his hands behind his back, but Mr. Hunter did

6    not comply. He did not know if the car Mr. Hunter was approaching belonged to Mr. Hunter, and

7    he did not know if Mr. Hunter would have access to weapons if he reached inside the car.

8    Officer Durell closed Mr. Hunter's door and grabbed his left arm to place him under arrest.

9    Mr. Hunter used physical strength to try to prevent his arms from being placed behind his back.

10   Officer Durell was between two cars in the parking area with little room to maneuver around Mr.

11   Hunter for an arm control hold.  He was also concerned that, if he struck Mr. Hunter or did anything

12   that could cause him to lose his balance, Mr. Hunter could fall and hit his head on one of the

13   vehicles parked there.

14   Officer Durell placed Mr. Hunter in a vascular neck restraint (LVNR) control hold and told

15   him to stop resisting. Mr. Hunter's airway was not restricted in any way. Mr. Hunter immediately

16   stopped resisting once Officer Durell applied the hold. Officer Durell did not apply any pressure

17   to Mr. Hunter's neck and Mr. Hunter did not have any loss of air or consciousness. Officer Schmidt

18   arrived and took control of Mr. Hunter's left arm. Officer Durell released the hold and took control

19   of Mr. Hunter's right arm. Mr. Hunter would still not allow the officers to place his hands behind

20   his back without them using physical force to do so. Mr. Hunter was not injured and did not make

21   any complaints at the scene.

22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 9

Both Mr. Hunter and Mr. Beausilien were arrested at approximately 9:48 p.m. They were both arrested for Obstruction, Trespass, and Resisting Arrest, and Mr. Beausilien was also arrested on an outstanding warrant. Officer Novak, who arrived on scene after Mr. Hunter was arrested, transported Mr. Hunter to jail. Officer Hinckle transported Mr. Beausilien to jail. Officer Durell returned to the DUI investigation. Officer Durell arrived at the Federal Way Police Department to continue processing Mr. Wells' criminal charge at about 10:17 p.m.

Had Mr. Hunter and Mr. Beausilien not interfered with the investigation, the officers would have done things differently. First, Officer Durell would have attempted to get Mr. Wells to cooperate with field sobriety testing before his arrest, potentially creating additional evidence for the DUI prosecution. Second, Officer Durell would not have left Mr. Wells alone in his patrol car after the arrest. Officers try to stay with DUI suspects upon arrest, to make sure they do not eat, drink, or vomit. They are also supposed to monitor the suspects to watch for medical issues, mental health issues, or attempts at escape or property destruction. Without Mr. Hunter's and Mr. Beausilien's interference, Officer Durell would simply have delegated all the other investigatory and traffic control tasks to Officers Hinckle and Schmidt. Third, Officer Schmidt would have taken more photographs of the scene. Officers try to take photographs 360 degrees around a collision; however, they also have to be mindful of backing up traffic for too long, as secondary accidents are also a safety consideration. Mr. Hunter and Mr. Beausilien made Officer Schmidt feel uncomfortable leaving them access to the scene without supervision.

Finally, this interference delayed the investigation by at least 20 minutes. Time is of the essence in a DUI investigation. Pursuant to RCW 46.61.502(1), a person is guilty of DUI if, within two hours after driving, their alcohol concentration is 0.08 or higher. While a driver can still be

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 10

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    prosecuted without information from this two-hour window, it is the goal of law enforcement

2    officers to complete their testing in this window. Additionally, had Mr. Wells consented to the

3    breath test at the station, this delay would also have impacted the results of that test. The delay

4    caused by Mr. Hunter and Mr. Beausilien, which would have been longer had they not been

5    arrested, had potentially significant impacts on the outcome of the DUI investigation and

6    prosecution process. This was not simply a matter of the officers arresting Mr. Hunter because

7    they were unhappy with his repeated failures to comply.

8    **B.     Federal Way Commander Casey Jones' Investigation**

9            On October 20, 2014, Mr. Hunter's mother, Sonetta Hunter, complained to the City about

10   (1) the validity of the trespass; (2) the use of the LVNR hold; and (3) the impoundment of Mr.

11   Hunter's car, which was registered to her. Allegedly, Ms. Pajarillo told Ms. Hunter that she told

12   the officers that it was up to them if they wanted Mr. Hunter to leave the property.

13          Federal Way Commander Casey Jones was assigned to investigate. He spoke with Ms.

14   Pajarillo at the AMPM, and she signed a witness statement that day that said:

15                   May 3 months ago there was an accident. I didn't see the accident.
                     I was working in the store & it was busy. The officer came inside &
16                   asked me if I wanted to trespass two men who were talking &
                     watching the accident. I didn't see what those guys did because I
17                   was busy. I asked, "why?" He said, "They are parked on your
                     parking lot." I could hear the guys yelling but I couldn't see them.
18                   He asked me if I wanted to give them trespass. I said, "It's up to you,
                     sir." He then went outside.
19
20   He also spoke with the officers involved. Commander Jones did not find any violations of the

21   Federal Way Manual of Standards, with the exception of the car impoundment, which was done

22   by Officer Novak, who is not a defendant.

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 11

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Plaintiff's counsel insist that this subsequent investigation and Ms. Parajillo's statement is

2   relevant to show that Officer Durell used excessive force on September 14, 2014. The defense

3   disagrees and has moved to exclude all of this evidence at trial. The defense expects that plaintiff's

4   counsel will either attempt to offer this information in their case in chief, or attempt to impeach

5   Officer Schmidt about what the store clerk told him inside the AMPM. Because the arrest was

6   lawful, the facts concerning the communications between Officer Schmidt and Ms. Parajillo are

7   entirely irrelevant to the issue for the jury. The defense requests that the parties be limited to

8   testimony that Officer Schmidt went in to the AMPM, spoke with the clerk, and came out with a

9   trespass order. These facts are undisputedly true, and a mini trial on what was actually said between

10  them will unnecessarily confuse the jury, waste time, and prejudice the defense by re-opening the

11  issue of whether the arrest was lawful.

12  **C.    Mr. Hunter's Criminal Prosecution**

13  On September 15, 2014, the City of Federal Way filed amended charges against Mr. Hunter

14  for Criminal Trespass in the Second Degree, Obstructing a Public Officer, and Resisting Arrest.

15  On September 3, 2015, the City dismissed the charges against both Mr. Hunter and Mr. Beausilien.

16  As outlined in defendants' motions *in limine*, the Court should exclude any testimony concerning

17  Mr. Hunter's criminal charges, investigation, or dismissal. It is irrelevant to his excessive force

18  claim and to his request for damages, since his arrest was lawful.

19  **D.    Racial Animus**

20  There is no evidence that any of the officers had any racial animus toward Mr. Hunter, Mr.

21  Hunter did not plead a claim based upon racial animus, Officer Durell's subjective intent is not

22  relevant to the pending excessive use of force claim, and use of force that is lawful under the

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 12

Fourth Amendment is a complete defense to Mr. Hunter's assault claim, as explained below. The Court should prohibit plaintiff's counsel from suggesting to the jury that Officer Durell or any other officer acted on racial animus or treated Mr. Hunter and Mr. Beausilien different than other people on the scene who were not African American.

### III.   APPLICABLE LAW & INSTRUCTIONS

**A.   Mr. Hunter's 42 U.S.C. § 1983 Use of Force Claim Against Officer Durell**

Mr. Hunter asserts an excessive use of force claim against Officer Durell under 42 U.S.C. § 1983. To establish this claim, Mr. Hunter must prove (1) that Officer Durell deprived him of his Fourth Amendment right to be free from unreasonable seizure; and (2) that Officer Durell was acting under the color of law. 42 U.S.C. § 1983. The parties agree that Officer Durell was acting under the color of law during the course of Mr. Hunter's arrest.

The standard for analyzing excessive force claims was established in *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). Excessive force claims are evaluated under the Fourth Amendment's reasonableness standard, and the court considers (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). The Ninth Circuit also asks jurors to consider the availability of alternative methods of capturing or subduing a suspect. *Smith*, 394 F.3d at 703.

Reasonableness is assessed from the perspective of an objectively reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 13

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    situation." *Graham*, 490 U.S. at 396.

2       The Ninth Circuit sets forth jury instructions to encompass this legal standard, and the

3    parties have jointly proposed a set that have been tailored to fit the facts of this case. Additionally,

4    RCW 10.31.050 directs law enforcement officers to "use all necessary means to effect the arrest"

5    when a suspect resists or tries to flee. RCW 10.31.050. This is consistent with federal law and is

6    information known to officers when effecting arrests in Washington. The defense submits a related

7    instruction for the jury's consideration.

8    **B.    Mr. Hunter's Assault Claim Against Officer Durell and the City of Federal Way**

9       "An assault is an attempt, with unlawful force, to inflict bodily injuries upon another,

10   accompanied with the present ability to give effect to the attempt if not prevented." *Brower v.*

11   *Ackerley*, 88 Wn. App. 87, 92, 943 P.2d 1141 (1997). Assault is an intentional tort, which requires

12   the intent to bring about a result that will invade the interests of another in a way that the law will

13   not sanction. Restatement (Second) of Torts § 8A. The defense requests that the Court not instruct

14   the jury on Mr. Hunter's assault claim, because the claim is subsumed by the § 1983 use of force

15   claim and liability for assault will either rise or fall with that claim; an assault instruction is

16   unnecessary, duplicative, and poses a risk of juror confusion and duplicative or double damages.

17      District courts have discretion to instruction on both 42 U.S.C. § 1983 use of force claims

18   and companion state law assault and/or battery claims, but it is not necessary that a court do so.

19   *See Velazquez v. City of Long Beach*, 793 F.3d 1010, 1029 (9th Cir. 2015) (acknowledges that

20   district courts may instruct on both claims. In *McKinney v. City of Tukwila*, 103 Wn. App. 391, 13

21   P.3d 631 (2013), the Washington Court of Appeals clearly held that, when there is a finding that

22   an officer's conduct was lawful under the Fourth Amendment, state law assault and battery claims

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    fail and officers are entitled to state law qualified immunity. *Id*. at 408-09. *See also Rice v.*

2    *Janovich*, 109 Wn.2d 48, 742 P.2d 1230 (1987) (error to instruct the jury on both assault and

3    outrage claims because the damages are identical and there would be a risk of double recovery).

4        Ninth Circuit district courts have determined that state law assault or battery claims are

5    subsumed by a § 1983 use of force claim. S*ee Plank v. Las Vegas Metro. Police Dep't*,

6    212CV2205JCMPAL, 2016 WL 1048892, at *9 (D. Nev. Mar. 14, 2016) (standard for battery by

7    a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim); *Mejia v. City of*

8    *Sacramento*, 2:02CV1174GEB-EFB, 2007 WL 891876, at *2 (E.D. Cal. Mar. 22, 2007) (plaintiff's

9    excessive force claims are subsumed in his assault and battery claims); *Teran v. Cty. of Monterey*,

10   C 06-06947 JW, 2009 WL 1424470, at *12 (N.D. Cal. May 20, 2009) (plaintiffs' excessive force

11   claims are subsumed in their assault and battery claims); *Oquendo v. City of Boise*, 1:15-CV-322-

12   BLW, 2017 WL 874569, at *10 (D. Idaho Mar. 3, 2017) (court dismissed battery claim because

13   plaintiff could not explain how a jury could award recovery for that claim and the excessive force

14   claims without awarding a double recovery); *Jurkowski v. City of Seattle*, C15-1155 TSZ, 2017

15   WL 4472859, at *6, n. 2 (W.D. Wash. Oct. 5, 2017) (same).

16       Here, the City is not requesting that the Court dismiss Mr. Hunter's assault claim. Instead,

17   the City acknowledges that a finding that Officer Durell used excessive force in violation of the

18   Fourth Amendment is synonymous with a finding of assault under state law. The City is therefore

19   willing to stipulate that, if the jury finds liability against Officer Durell for the § 1983 use of force

20   claim, the Court may enter judgment against the City on the assault claim. This stipulation makes

21   an instruction on Mr. Hunter's assault claim unnecessary, and excluding it from the instructions

22

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    will simplify the trial and avoid the risk of confusing the jury or an award that encompasses

2    duplicative or double damages.

3    **C.      Proposed Limiting Instruction**

4           The defense anticipates juror confusion with respect to Officer Durell's decision to arrest

5    Mr. Hunter and the basis for that arrest, how the legality of the arrest ties into Mr. Hunter's use of

6    force claim, and whether the actions of any other officers can be the basis for liability, especially

7    given the fact that the City of Federal Way is also a defendant. Therefore, the defense submits a

8    limiting instruction as follows:

9                  This court has already determined that defendant Kris Durell's
                   decision to stop and arrest the plaintiff was lawful. Further, the
10                 plaintiff is not claiming that any of the other officers acted
                   unlawfully. The only issue for your consideration is whether Officer
11                 Durell used excessive force when effecting the lawful arrest of the
                   plaintiff.

12   **D.      Special Interrogatories for Qualified Immunity**

13          The qualified immunity inquiry asks: (1) was there a violation of a constitutional right, and

14   if so, (2) was the right at issue "clearly established" such that it would have been clear to a

15   reasonable officer that his conduct was unlawful in that situation. *Saucier v. Katz*, 533 U.S. 194,

16   201-02 (2001). A right is clearly established if the contours of the right are sufficiently clear that

17   every reasonable officer would understand that what he is doing violates that right. *Ashcroft v. al-*

18   *Kidd*, 131 S. Ct. 2074, 2083 (2011); *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en

19   banc). This requires some existing precedent to have placed the statutory or constitutional question

20   beyond debate. *Ashcroft*, 131 S. Ct. at 2083 (2011).

21                 [I]f the existence of a right or the degree of protection it warrants in
                   a particular context is subject to a balancing test, the right can rarely

22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 16

be considered "clearly established" at least in the absence of closely corresponding factual and legal precedent.

*Brewster v. Bd. Of Education*, 149 F.3d 971, 980 (9th Cir. 1998).

Qualified immunity is not defeated by a finding that an action was unconstitutional and that constitutional right was clearly established at the time. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987). "[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*; *see also Mattos*, 661 F.3d at 446 (officers may be entitled to qualified immunity despite excessive force determination).

Even if the jury determines that the force Officer Durell used to effect Mr. Hunter's lawful arrest was excessive, it is still likely to determine that Mr. Hunter was resisting arrest and that use of the LVNR hold was not likely to cause any physical injury to Mr. Hunter. Given that this was a lawful arrest, not every reasonable officer in Officer Durell's position would have known that use of the LVNR control hold under these circumstances would violate Mr. Hunter's Fourth Amendment rights, and therefore he will likely be entitled to qualified immunity.

The most appropriate way for the Court to consider Officer Durell's qualified immunity affirmative defense is to submit special interrogatories to the jury to resolve the material factual issues, thus allowing the Court to rule on a Rule 50(b) qualified immunity motion after receipt of the jury's verdict. The Court does not need to submit the special interrogatories to the jury unless and until the jury returns a plaintiff's verdict. *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 522 (9th Cir. 1999) (whether to submit special interrogatories to the jury is a matter committed to

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

the discretion of the district court); *McArthur v. City & Cty. Of San Francisco*, C15-02164 WHA, 2016 WL 3136907, at *6 (N.D. Cal. June 6, 2016) (court provided jury with special interrogatories to guide in court's qualified immunity analysis); *Burnett v. Bottoms*, 368 F. Supp. 2d 1033, 1042 (D. Ariz. 2005) (suggesting use of special interrogatories to determine if officer would be entitled to qualified immunity despite excessive force finding); *Tortu v. Las Vegas Metro. Police Dep't.*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict.) The defense therefore submits a set of proposed special interrogatories for the Court's consideration.

## IV.   CONCLUSION

The evidence will show that Officer Durrell used reasonable and minimal force to take plaintiff into custody pursuant to a lawful arrest. Defendants look forward to presenting this case to the jury.

DATED this 27th day of June, 2018.

CHRISTIE LAW GROUP, PLLC


By _____/s/ Ann E. Trivett_____
    ANN E. TRIVETT, WSBA #39228
    Attorney for Defendants
    2100 Westlake Avenue North, Suite 206
    Seattle, WA  98109
    Telephone:  (206) 957-9669
    Email: ann@christielawgroup.com

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 18

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1

CHRISTIE LAW GROUP, PLLC

2

By _____/s/ Thomas P. Miller_____

3

THOMAS P. MILLER, WSBA #34473
Attorney for Defendants

4

2100 Westlake Avenue North, Suite 206
Seattle, WA  98109

5

Telephone:  (206) 957-9669
Email: tom@christielawgroup.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 19

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on June 27, 2018, I electronically filed the foregoing document with
the Clerk of the Court using the CM/ECF system which will send notification of such filing to the
3  following::

4                          James Bible, WSBA #33985
                           James Bible Law Group
5                          14205 SE 36th Street, Suite 100
                           Bellevue, WA 98006
6                          Email: jbiblesblaw@gmail.com
                           Attorney for Plaintiff
7
                           Jesse Valdez, WSBA #35378
8                          Valdez Lehman, PLLC
                           600 108th Avenue NE, Suite 347
9                          Bellevue, WA 98004
                           Email: jess@valdezlehman.com
10                         Attorney for Plaintiff

11                         J. Ryan Call, WSBA #32815
                           Acting City Attorney
12                         City of Federal Way
                           33325 Eighth Ave. S.
13                         Federal Way, WA  98003
                           Phone:  253-835-2572
14                         Email:  ryan.call@cityoffederalway.com

15
                                   CHRISTIE LAW GROUP, PLLC
16
                           By ___/s/ Ann E. Trivett_____
17                            ANN E. TRIVETT, WSBA #39228
                              Attorney for Defendants
18

19

20

21

22

DEFENDANTS' TRIAL BRIEF
(2:16-cv-01445-MJP) - 20