**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSIAH HUNTER, | No. 18-35666 |
| Plaintiff-Appellee, | D.C. No. 2:16-cv-01445-MJP |
| v. | |
| CITY OF FEDERAL WAY; KRIS DURRELL, Federal Way Police Officer, | MEMORANDUM* |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted December 10, 2019
Seattle, Washington

Before: GRABER, BERZON, and HIGGINSON,** Circuit Judges.

On September 14, 2014, Federal Way Police Officer Kris Durell placed Josiah Hunter in a chokehold while arresting him for trespassing. After a six-day trial, a jury found that Durell's use of a chokehold against Hunter constituted

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*     The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

excessive force in violation of the Fourth Amendment. The jury awarded compensatory and punitive damages.

1. "The [Fourth Amendment] right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013). Construing all evidence in favor of the verdict, as we must, *A.D. v. California Highway Patrol*, 712 F.3d 446, 452–53 (9th Cir. 2013), Hunter did not offer even passive resistance when Durell pushed him against a car door and put Hunter's arms against his back before choking him, nor did he resist as he was being choked. We have characterized as serious—that is, non-trivial—any force that is capable of causing death or serious injury, *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001), and extensive expert testimony here confirmed that the chokehold technique Durell deployed against Hunter could have caused death or serious injury.

A recent, chokehold-specific precedent confirms that Durell's chokehold violated Hunter's clearly established rights. *Tuuamalemalo v. Greene* observed that, at least as of January 25, 2014, "[t]here is a robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment." 946 F.3d 471, 477 (9th Cir. 2019) (per curiam).

At some points, *Tuuamalemalo* frames its holding as covering chokeholds

administered against "non-resisting, restrained person[s]." *Id.* Tuuamalemalo was "restrained" at the time of the chokehold, as the officers had "pinn[ed] [Tuuamalemalo] to the ground" before the chokehold was applied. *Id.* Here, Durell pushed Hunter against his car and put Hunter's arms behind his back before applying the chokehold, so Hunter was restrained when the chokehold was applied. And "the [applicable] standard . . . requires us to view the facts in the light most favorable to the plaintiff. At this stage in the proceedings, we must assume that [Hunter] was not resisting when [Durell] used a chokehold on him." *Id.* at 478. Moreover, the plaintiff in *Tuuamalemalo* had previously been "aggressive" with the officers who choked him, justifying a grant of qualified immunity for a punch thrown at him before the chokehold, *Id.*, whereas Hunter never posed a threat of any kind.

Durell's qualified immunity argument accordingly fails.

2. As to Durell's evidentiary challenges:

(a) The district court did not abuse its discretion by admitting evidence that would have borne on Hunter's dismissed false arrest claim. "[T]he facts underlying [a] seizure are pertinent in judging the overall reasonableness of the seizure for Fourth Amendment purposes, including the reasonableness of the force used to effectuate the seizure." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015). A full account of the facts from which the trespass arrest arose was

3

essential to a fair assessment of the reasonableness of the force used, particularly as to "the severity of the crime at issue" and "whether the suspect pose[d] an immediate threat to the safety of the officers or others." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

(b) The district court did not abuse its discretion by admitting evidence that Durell had described Hunter as a "black male[]" in his police report. "Establishing the officers' racial motivation tends to demonstrate why the plaintiffs' testimony, and not the officers', should be deemed credible by the jurors." *Price v. Kramer*, 200 F.3d 1237, 1251 (9th Cir. 2000). Although evidence of racial animus is not relevant to whether a particular use of force is excessive, it *is* relevant to whether the defendant acted with the requisite evil motive to justify punitive damages, which were at issue before the jury. *Id.*

(c) The district court did not abuse its discretion by admitting for impeachment purposes a prior inconsistent statement that Durell had once reported to his fellow officers that he lacked control over his use of force. *See United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992). Durell had previously testified that he "always sticks with his training," representing to the court that he applied his training consistently and in a controlled manner.

Hunter arguably referred to that evidence for purposes other than impeachment in his closing argument. But Durell did not contemporaneously

4

object to that use of the (admissible) evidence. In any case, that single remark in closing, arising after five days of trial and in the midst of a lengthy closing argument, cannot be said to have "more probably than not tainted the verdict." *United States v. 4.85 Acres of Land*, 546 F.3d 613, 617 (9th Cir. 2008) (cleaned up).

      3. Durell contends that there is insufficient evidence to support the punitive damages award. We disagree. Punitive damages may be assessed "when the defendant's conduct is shown to be motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Construed in the light most favorable to Hunter, the evidence showed that Durell knew that Hunter had assisted Durell's investigation by escorting a DUI suspect back to the scene of a traffic accident in which Hunter was not involved; that Durell assumed Hunter to have attempted theft when he reached down to pick up the DUI suspect's wallet, but in fact the wallet had fallen from suspect's pocket and the suspect asked Hunter to return it; that despite Hunter's compliance with Durell's requests that he step back from the scene of the crash into a gas station parking lot, Durell and another officer agreed to instigate a trespass charge against Hunter by soliciting a trespass request from the gas station attendant[1]; that Durell proceeded to arrest Hunter for being where Durell directed

---

[1] Although not pertinent to our analysis, we note that, on the evidence at trial, the gas station attendant did not in fact request that Hunter be "trespassed."

him to be; that Hunter was getting in his car to leave the premises when he was arrested; and that Durell did not announce that Hunter was under arrest before administering the chokehold, despite Hunter's lack of resistance. Taken together, that evidence supported the jury's punitive damages award.

4. Finally, Durell argues that the district court erroneously refused to submit special interrogatories to the jury because such interrogatories might have strengthened his qualified immunity defense. But there is "no authority from this circuit supporting the proposition that special interrogatories are *required* for the purpose of evaluating a post-verdict qualified immunity defense." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017).

**AFFIRMED.**